**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ONE WORLD TECHNOLOGIES, LTD. | ) | |
| and RYOBI TECHNOLOGIES, INC., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **Case No. 04 C 4337** |
| | ) | |
| REXON INDUSTRIAL CORP., LTD., | ) | |
| POWER TOOL SPECIALISTS, INC., | ) | |
| and REXON USA CORP., | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

One World Technologies, Ltd. and Ryobi Technologies, Inc. (collectively, "Ryobi") have

sued Rexon Industrial Corp., Ltd., Rexon USA Corp., and Power Tool Specialists, Inc.

(collectively, "Rexon") for patent infringement. In June 2005, the Court issued a ruling

construing disputed terms in the patents-in-suit, U.S. Patent Nos. 6,755,107 and 6,360,797. *One*

*World Techs. v. Rexon Indus. Corp.*, No. 04 C 4337, 2005 WL 1377897 (N.D. Ill. June 3, 2005).

Ryobi and Rexon have now filed various motions for summary judgment. With regard to the

'107 patent, Rexon seeks summary judgment on the issue of infringement, and Ryobi seeks

summary judgment on Rexon's defense of inequitable conduct. With regard to the '797 patent,

Rexon seeks summary judgment on its claim the patent is invalid. For the reasons stated below,

the Court denies both sides' motions regarding the '107 patent and grants in part and denies in

part Rexon's motion regarding the '797 patent.

1

**Facts**

Ryobi asserts two patents in this case. The '107 patent discloses a miter saw having a light beam alignment system. A miter saw is used to cut workpieces at precise angles. The light beam alignment system assists the operator of the saw in aligning the saw blade to the area of the workpiece to be cut. Ryobi states that its invention improves on the prior art by creating a miter saw with a built-in light beam alignment system and guards that protect the operator from debris and from the light beam. The '797 patent discloses a portable support assembly that allows woodworking implements to be transferred to and used at various worksites without cumbersome disassembly or modification. Ryobi contends that Rexon has infringed both patents.[1]

**Discussion**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court draws all reasonable inferences in the light most favorable to the non-moving party. *Continental Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

**1.     '107 patent**

**A.     Non-infringement**

Ryobi contends that Rexon infringed claim 11 of the '107 patent, which recites a miter saw with a light alignment system. Rexon argues that its accused products lack several of the limitations in claim 11. Rexon focuses its motion for summary judgment, however, on the

---

[1] One World originally sued three other defendants, Porter-Cable Corp., Delta International Machinery Corp., and Pentair, Inc., but they were later dismissed following a settlement.

seventh limitation:

> a movable guard that pivots to cover at least a portion of the blade that is not engaging the workpiece, *the guard having an opaque portion that blocks the beam of light to prevent the beam of light from being directed toward an operator of the saw* and a transparent portion that allows the narrow beam of light to pass through to create a line of light on the workpiece when the moveable guard is disposed between the laser and the workpiece.

U.S. Patent 6,755,107, col. 7, lines 41-49 (emphasis added).  Rexon maintains that because the movable guards on its accused products lack an opaque portion or the functional equivalent of an opaque portion, no fact finder reasonably could find that its products infringe the '107 patent. Ryobi contends that there is a genuine issue of material fact that precludes summary judgment. The Court agrees with Ryobi.

Determining whether an accused product infringes a patent claim involves two steps. The court must first construe the claims to ascertain their scope and then compare the claims as construed to the accused products.  *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006).  The Court completed the first step in its June 2005 claim construction ruling.  During the second step of the infringement analysis, the patentee bears the burden of proving that the accused products contain each limitation of the asserted claim or a substantial equivalent of each limitation.  *See S. Bravo Sys. Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996).  If Rexon's accused products lack a single claim limitation, Ryobi's claim for infringement fails.  *See Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).  Summary judgment of non-infringement can be granted only "if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims."  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

The Court begins by reviewing our earlier construction of the term "opaque," which we defined as "a substance that is impervious to light and therefore blocks the passage of light." *One World*, 2005 WL 1377897 at *11. In construing this term, we rejected both Ryobi's and Rexon's efforts to further limit the term's definition. *Id.* (rejecting Ryobi's proposal to incorporate into the definition of "opaque" the reason for having an opaque portion and Rexon's proposal to add a statement that substances that are opaque are "neither translucent or transparent"). Given this decision, the determinative issue on the present motion is whether there is a genuine issue of fact regarding the opacity of the movable guards on Rexon's accused products. Both parties focus their discussion on the portion of the lower movable guards on Rexon's accused products to which a warning label is affixed.

Rexon argues that the lower movable guards are not opaque because they do not block the passage of light. In support of its argument, Rexon relies on the opinions of Dr. Norman Axelrod, a consultant on optics, lasers, and vision technologies. Rexon Infringement LR 56.1 Reply, Ex. 31 (Axelrod Report). Dr. Axelrod used a series of observation tests to determine whether light from several different types of sources, including a white light bulb, a hand-held laser pointer, and the laser beam alignment system attached to the accused products, could pass through the lower movable guard alone, through the warning label alone, and through the lower movable guard with the warning label attached. During these tests, Dr. Axelrod stated that when he shined the light source through the inner side of the guard alone, the warning label alone, and the guard with the warning label attached, he observed light penetrating through to the other side. He therefore concluded that no portion of the accused products' lower movable guards was opaque. *Id.* at 4-22. Ryobi challenges the methodology used by Dr. Axelrod and his ultimate

conclusions on the ground that several of his testing scenarios failed to replicate the conditions in which the accused products are actually operated.

In opposition to Dr. Axelrod's opinions, Ryobi relies on the opinions of Dr. Alexander Slocum, a professor of mechanical engineering at MIT. Ryobi Infringement LR 56.1 Response, Ex. O (Slocum Report). Dr. Slocum also tested the opacity of the accused products' lower movable guards using two tests, a paper test and an observation test. In administering the paper test, Dr. Slocum held a piece of white paper in front of the lower movable guard with the warning label attached. Even "when [he] brought the paper as close as [he] could to the protective label (i.e., within one inch), [he] could see no light projected onto it." *Id.* at 6. In administering the observation test, Dr. Slocum used the accused products and examined whether he could see the light from the laser beam alignment system on the outer side of the lower movable guard with the warning label attached. He stated that he could not. *Id.* Based on these tests, Dr. Slocum concluded that this portion of the accused products' movable guards was opaque. Rexon contends that Dr. Slocum's results are unreliable because the paper test is "junk science" and because he operated the accused products improperly when he allegedly observed no light passing through the lower movable guard and the warning label.

"While disagreements do not always create genuine issues of material fact, on this record the conflicting allegations of experts leaves material factual questions unanswered." *See Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1352 (Fed. Cir. 2000). The parties' expert witnesses disagree on the appropriate method for measuring opacity and the determinative issue of whether portions of the accused products' movable guards are opaque. At this juncture, there is a question of fact regarding these two issues. Though both sides have presented the

results of their experts' testing, neither has established conclusively that its methodology is scientifically accurate and that the other side's is unreliable. The Court therefore denies Rexon's motion for summary judgment on the issue of infringement.

## B. Inequitable conduct

As a defense to Ryobi's infringement claim, Rexon claims that Ryobi engaged in inequitable conduct in prosecuting the '107 patent. Ryobi has moved for summary judgment on this defense. To prove inequitable conduct in the prosecution of a patent, Rexon must establish that Ryobi intentionally made affirmative misrepresentations of material fact, failed to disclose material information, or submitted false material information to the Patent and Trademark Office (PTO). *Pharma L.P. v. Boehringer Ingelheim GMBH*, 327 F.3d 1359, 1366 (Fed Cir. 2001). "If the threshold requirements of materiality and intent are established, those fact findings are balanced to make the determination whether the scales tilt to a conclusion that inequitable conduct occurred." *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1261 (Fed. Cir. 2001) (internal citations omitted).

Rexon contends that Ryobi failed to disclose material information to the PTO, specifically, information relating to the commercial embodiments of prior art patents referenced in the '107 patent. Information is material if it establishes a *prima facie* case of unpatentability or if it refutes a position asserted by the patentee during prosecution in opposition to unpatentability or in support of patentability. 37 C.F.R. § 1.56(b). Ryobi cited U.S. Patent No. 6,035,757 issued to Caluori (a rotary cut alignment device) and U.S. Patent No. 5,199,343 issued to O'Banion (a power miter saw with a louvered blade guard), among other prior art references, during the '107 patent prosecution. Normally, when one cites a patent for a prior art reference

during prosecution, one need not submit additional information that is cumulative of the patent, such as commercial embodiments of the prior art. *See LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 384 (D. Del. 2000); *Weatherchem Corp. v. J.L. Clark, Inc.*, 937 F. Supp. 1262, 1293-94 (N.D. Oh. 1996), *vacated on other grounds*, 163 F.3d 1326 (Fed. Cir. 1998).

Rexon nonetheless maintains that One World intentionally withheld non-cumulative, material information regarding the commercial embodiments of the Caluori and O'Banion patents that would have revealed to the PTO "a more complete combination of the relevant features" than the patents themselves. *See Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 204 F.3d 1368 (Fed. Cir. 2000). In *Semiconductor Energy Lab.*, the plaintiff had obtained a patent on a transistor "used to switch the pixels in an active matrix display unit on or off." *Id.* at 1371. According to the plaintiff, the claimed transistor improved on prior art by adjusting the transistor's electrical properties to reduce blurring. *Id.* After trial, the district court concluded that the plaintiff had engaged in inequitable conduct by intentionally failing to submit material information to the PTO. *Id.* at 1472-73. The Federal Circuit affirmed. The plaintiff contended that the information in question – an untranslated portion of a submitted prior art reference – was cumulative. The court concluded, however, that the withheld information was material because it revealed a more complete combination of the elements disclosed in the prior art references submitted to the PTO during patent prosecution. *Id.* at 1374.

The Court agrees that Rexon has identified a genuine issue of fact as to whether Ryobi intentionally failed to disclose at least one piece of material information to PTO: the instruction manual for the commercial embodiment of the Caluori patent, referred to by the parties as the BladePoint device. The BladePoint instruction manual states that, "All power saws incorporate

shields to protect your eyes from debris. *These same shields will not allow the laser's beam to shine into your eyes creating a visual distraction*." Rexon Inequitable Conduct LR 56.1 Resp, Ex. 24 (emphasis added). Rexon contends that these sentences are material to the patentability of Ryobi's invention because they are inconsistent with statements Ryobi made during prosecution of the '107 patent. The PTO initially rejected Ryobi's claims. Ryobi responded to the initial rejection by making the following statements defending the novelty of its invention:

- "the lower blade guard of the present invention is designed to actively obstruct light directed toward the eyes of the operator[.]"

- "[a]bsent this claimed feature there lacks the motivation to combine *Caluori* and *Kelly* [patents reciting rotary cut saw alignment devices] with *Bosten* [a patent reciting a miter saw] because in doing so would present the problem of actively preventing the beam of light from being directed toward the operator's eyes."

- "[n]either *Caluori* or *Kelly* appreciate the problem associated with light in the eye's [sic] of the operator[.]"

Rexon Inequitable Conduct LR 56.1 Resp., Ex. 4 at 107APP00084-85.

Ryobi contends that the BladePoint manual is not inconsistent with the statements it made to the PTO. First, Ryobi contends that its statements during prosecution were about the Caluori patent itself, meaning that the sentences from the manual, which concern the commercial embodiment of the patent, were unrelated to its statements about the patent alone. Second, Ryobi argues that the manual simply identifies the issue of light shining into an operator's eyes but does not address the solution to the problem – a "movable guard having an opaque portion" – recited in the '107 patent. Ryobi cannot, however, obtain summary judgment by encouraging the Court to read narrowly the language of the BladePoint manual and Ryobi's own statements to the PTO. The manual indicates that the power rotary saws to which a BladePoint device can be attached, such as those that are commercial embodiments of the O'Banion patent, have shields or

8

guards to protect an operator's eyes. Construing the evidence in the light most favorable to Rexon, a fact finder reasonably could find that the manual is inconsistent with Ryobi's statement to the PTO that prior art had not recognized or addressed the problem of light from a light beam alignment system shining into the operator's eyes.

Regardless, Ryobi contends that the inventors of the '107 patent lacked the intent required to establish inequitable conduct. "'Intent to deceive can not [sic] be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.'" *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006) (quoting *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed.Cir. 1996)). Nonetheless, "direct evidence of intent or proof of deliberate scheming is rarely available in instances of inequitable conduct." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). Rather, intent is usually inferred from the "facts and circumstances surrounding the applicant's conduct." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995).

Rexon maintains that Philip Minalga, one of the named inventors on the '107 patent, received the BladePoint instruction manual and used it when testing the BladePoint device with various miter saws. Rexon Inequitable Conduct LR 56.1 Resp. ¶ 30. Ryobi responds that there is no evidence that Minalga possessed or read a copy of the manual. Ryobi Inequitable Conduct LR 56.1 Stmt. ¶ 42. Rexon, however, has cited an e-mail from Minalga to his co-inventors in which he cites the BladePoint instruction manual, as well as deposition testimony indicating that Minalga used the manual to mount the BladePoint device on the arbor of a miter saw. Rexon Inequitable Conduct LR 56.1 Resp., Ex. 7 (Minalga Dep.) at 118; Ex. 10 (Minalga e-mail Oct.

30, 2000) at OWT 3018. Though Minalga discusses another portion of the manual in his e-mail and his deposition testimony, a fact finder reasonably could find that he was aware of the statement in the manual regarding power rotary saws with shielding and withheld it from the PTO. For these reasons, the Court concludes that Rexon has shown the existence of a genuine issue of fact as to whether Ryobi intentionally withheld material information from the PTO. The Court therefore denies Ryobi's motion for summary judgment on the issue of inequitable conduct.[2]

### 2. '797 patent

Ryobi contends that Rexon's accused products infringe claims 1, 13, 14, and 15 of the '797 patent, which is directed to a "support assembly for transporting a motor driven woodworking implement." U.S. Patent No. 6,360,797 col. 5, lines 58–59. An issued patent is presumed to be valid. 35 U.S.C. § 282. To overcome this presumption, the party challenging the patent must prove its invalidity by clear and convincing evidence. Rexon contends that the claims asserted by Ryobi are invalid because they were anticipated by prior art references, *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003), or were obvious to an artisan of ordinary skill in the art at the time of invention. *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004). The Court examines each asserted claim in turn.

### A. Claim 1

Claim 1 recites a "support assembly for transporting a motor driven woodworking implement" comprising the following:

---

[2] For this reason, the Court need not deal at this time with the other items of information that Rexon contends Ryobi withheld from the PTO.

a base having a plurality of generally vertically extending sidewalls and having a base upper end and a base lower end, an interior cavity being defined between the sidewalls and the base upper and lower ends, the base also having opposing laterally spaced apart first and second ends;

a table having a work support surface and being disposed atop the base upper end;

a wheel assembly disposed on the base and including at least one wheel rotatable about a wheel axis, the wheel being disposed proximate the base lower end at one of the first and second ends of the base; and

a hand assembly mounted on the base at the other of the first and second ends opposing that end proximate the wheel, the handle assembly to raise the base lower end off a horizontal surface upon which the base is placed, thereby facilitating manual movement of the support assembly from one location to another.

'797 Patent, col. 5, line 60 - col. 6, line 10. Rexon contends that claim 1 is invalid because it was both anticipated and obvious when the '797 patent application was filed.

In response, Ryobi attempts to revisit the Court's claim construction ruling, in which we considered the phrase "[a] support assembly for transporting a motor driven woodworking implement" found in the preamble to claim 1. In its briefs submitted in connection with the claim construction process, Ryobi contended that the phrases "support assembly" and "for transporting a motor driven woodworking implement" were claim limitations. The Court agreed that "support assembly" was a claim limitation but found that the phrase "for transporting a motor driven woodworking implement" merely stated the purpose of the invention and was not a claim limitation. *One World*, 2005 WL 1377897, at *15-16.

In responding to Rexon's motion for summary judgment, Ryobi tries to sidestep the Court's ruling by arguing that the term "support assembly" refers to a power tool housing. In our claim construction ruling, however, the Court clearly held that "[c]laim one is directed towards a 'support assembly,' not the combination of a support assembly and a motor driven woodworking implement." *Id.* at *16.

We turn to the question of whether claim 1 was anticipated. A claim is anticipated and

therefore invalid if "a prior art reference ... expressly or inherently contains each and every limitation of the claimed subject matter." *See Schering Corp.,* 339 F.3d at 1379. To anticipate, a prior art reference need not come from the same field or have the same intended function as the patent-in-suit. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). In *Schreiber*, for example, the Federal Circuit held that prior art disclosing a container with a conical top for dispensing liquids anticipated a patent for a container with a conical top for dispensing popcorn. *Id.* ("It is well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable."). Rexon contends several patents anticipated the '797 patent.[3]

The Jordan patent, U.S. Patent No. 3,118,685, is the one that both parties treat as the most similar to the invention recited in claim 1. The Jordan patent discloses a mobile combination tool chest and workbench. Ryobi contends that the Jordan patent fails to anticipate Claim 1 because each of its claims is directed at elements of a portable tool chest and workbench, not a mobile housing for a power tool. The Court rejects this argument. Again, as the Court stated in our claim construction ruling, claim 1 does not require a power tool housing, but simply discloses a support assembly. *See One World*, 2005 WL 1377897, at *16 ("Nowhere in claim one does the plain language reference a motor driven woodworking implement, much less require that the implement be part of the claimed invention.").

Ryobi raises only one other issue regarding the Jordan patent: it contends that the device patented by Jordan has no "generally vertically extending sidewalls." Claim 1 of the Jordan

---

[3] Specifically, Rexon cites U.S. Patents Nos. 3,118,685 (Jordan); 5,452,908 (Bencic); 5,803,472 (Lien); 5,551,558 (Bureau); 6,318,713 (Levi); 1,584,028 (Gottschalk); 2,674,130 (Spychalla); 3,149,651 (Belrose); 4,265,283 (Nash); 4,516,612 (Wiley); 4,969,496 (Romans); and 5,778,953 (Braddock); 3,931,751 (Simonson); and 5,819,671 (Ocampo).

patent describes a device that has side walls in which the lower edge is partly parallel to the upper edge but, near the junction with the front end piece, angles upward. *See* '685 Patent, col. 4, lines 24-30; *see also id.,* fig. 2. This is insufficient to create a genuine issue of material fact. There is no question that the sidewalls extend vertically; viewed from the ends of the Jordan device, the sidewalls are entirely vertical. Viewed from the sides, the sidewalls contain the short angled portion near the front end piece, but that does not affect whether the sidewalls are "generally" vertical. "Generally" does not mean "entirely." In short, the Jordan patent clearly and convincingly anticipates claim 1 of the '797 patent; nothing in the latter claim requires that the upper and lower edges of the sidewalls be parallel for their entire length (i.e., it does not require the sidewall pieces to be rectangular). Ryobi has failed to show that there exists a genuine issue of fact material to the anticipation issue.[4]

### B. Claims 13, 14, and 15

Claim 13 recites the support assembly disclosed in claim 1, with two pairs of foldable legs that are "upwardly swingable to a position within the base." Claims 14 and 15 recite the support assembly recited in claim 13, with webs extending between each pair of foldable legs (claim 14) and "a fastening member connected between each leg and the base to prevent the leg from being accidentally retracted" (claim 15). Each of these claims are dependent from claim 1, but "[e]ach claim of a patent is 'presumed valid independently of the other claims[,]' and 'dependent claims shall be presumed valid even though dependent upon an invalid claim.'" *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 24 (Fed. Cir. 2000). Nonetheless,

---

[4] For this reason, the Court need not address Rexon's argument that the prior art it cites rendered claim 1 of the '797 patent obvious.

Rexon contends these claims are invalid.

In arguing that claims 13, 14, and 15 are anticipated by earlier patents, Rexon argues that Ryobi is contending that Rexon infringes those claims based on a construction of the claims that is contrary to the Court's claim construction ruling. *See* Rexon Invalidity Mem. at 12-13. If that construction is used, Rexon argues, claims 13, 14, and 15, so construed, are anticipated by earlier patents.

This curious argument has a short answer to it: the construction of claims 13, 14, and 15 that will be used in determining infringement is the construction the Court previously determined. If Rexon believes – as it apparently does, *see* Rexon Infringement Mem. at 12 – that the claim construction ruling dooms Ryobi's claim of infringement as to claims 13, 14, and 15 of the '797 patent, then it should have moved for summary judgment on the issue of infringement. The Court sees no proper basis to premise an anticipation ruling on a claim construction that varies from the one we ordered.

Rexon also argues that claims 13, 14, and 15 are obvious based on a series of earlier patents. In its summary judgment memorandum, however, Rexon barely made an effort to discuss the factors relevant to the obviousness analysis, and it made no argument about what it was that would have made it obvious to one skilled in the field to modify or combine the teachings of the earlier references, an important component of obviousness. *See Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm Corp.,* 225 F.3d 1349, 1356 (Fed. Cir. 2000). Rexon touched on some of these factors in its reply brief, but that effort came too late. It is not entitled to summary judgment that claims 13, 14, and 15 are obvious.

**Conclusion**

For the reasons stated above, the Court denies defendants' motion for summary judgment of non-infringement of the '107 patent [docket no. 179] and plaintiffs' motion for summary judgment on the defense of inequitable conduct [docket no. 181]. The Court grants defendants' motion for summary judgment of invalidity as to claim 1 of the '797 patent but otherwise denies the motion. [docket no. 177] The case is set for a status hearing on May 25, 2006 at 9:30 a.m. for the purpose of setting a trial date.

Date: May 9, 2006
MATTHEW F. KENNELLY
United States District Judge